**In re Elmer W. JACKSON t/a Jack's Trucks, Debtor.**

**Bankruptcy No. 85–A–0842.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

March 3, 1986.

Alan Swendiman, Washington, D.C., for movant Commercial Credit Equipment Corp.

Roger Frankel, Bethesda, Md., for debtor Jackson.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

Before the court is the motion of Commercial Credit Equipment Corp. seeking an extension of time within which to file a proof of claim and the opposition thereto filed by the debtor in possession. The motion was filed on November 18, 1985, and was made necessary by Commercial Credit's failure to file its proof of claim timely.

The underlying Chapter 11 proceeding was filed on May 23, 1985, and a meeting of creditors pursuant to 11 U.S.C. § 341(a) was set for July 15, 1985, and completed on that date. Because the claim of Commercial Credit was listed by the debtor as disputed, the creditor had the duty to file a timely proof of claim or risk being time-barred.[1] The bar date for filing proofs of disputed claims in Chapter 11 proceedings arises from Bankruptcy Rule 3003(c)(3), which directs the court to fix the time within which proofs of claim may be filed. In the instant case, this court set a bar date for filing claims at 90 days from the conclusion of the § 341 meeting. The actual bar date was October 15, 1985, being the first day not a Saturday, Sunday, or holiday after the 90th day. Bankruptcy Rule 3003(c)(3), together with Rule 9006(b)(1), also governs the granting of an enlargement of time. Bankruptcy Rule 9006(b)(1) provides:

(b) *Enlargement*

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where

---

1. The Advisory Committee Note to subdivision (c) of Rule 3003 states:

> *Subdivision (c).* This subdivision permits, in paragraph (1), the filing of a proof of claim but does not make it mandatory. Paragraph (2) requires, as does the Code, filing when a claim is scheduled as disputed, contingent, or unliquidated as to amount. It is the creditor's responsibility to determine if the claim is ac-

curately listed. Notice of the provision of this rule is provided for in Official Form No. 16, the order for the meeting of creditors. In an appropriate case the court may order creditors whose claims are scheduled as disputed, contingent, or unliquidated be notified of that fact but the procedure is left to the discretion of the court.

the failure to act was the result of excusable neglect.

On June 18, 1985, the clerk of court sent Bankruptcy Official Form 16C to all creditors. The form contained notice of the filing of the bankruptcy case and fixed various dates. A notice individually typed on the form established the bar date for filing of claims. It is undisputed that the movant received this timely notice of the filing of the bankruptcy proceeding. In addition, at the same time that the bankruptcy case was filed, there was pending a lawsuit between movant Commercial Credit Equipment Corp. and Elmer W. Jackson, the debtor in possession, in the Circuit Court for Frederick County, Maryland, Civil Action No. 243–L. On or about May 28, 1985, debtor in possession, defendant in that action, filed through counsel a suggestion of bankruptcy in the circuit court, serving a copy upon counsel for Commercial Credit. It is undisputed that the notice in the Circuit Court case was received, particularly since the notice operated as a stay under 11 U.S.C. § 362(a) of that ongoing litigation, bringing it to a halt.

Counsel for Commercial Credit earnestly urges that cause exists for the extension of time, relying upon the affidavit of Alan R. Swendiman filed in these proceedings on November 18, 1985. Counsel for Commercial Credit agreed at oral argument that the untimely death of James C. Eastman, a partner in the firm of Commercial Credit, had no effect upon this case. The fact that notice of the meeting of creditors was not received by an attorney at the law firm for Commercial Credit has no relevance whatsoever. The client, Commercial Credit, received notice of the § 341 meeting. Counsel for Commercial Credit received actual notice of the filing of the bankruptcy case by means of the pleading filed in the Frederick County action.

Some two weeks before the running of the bar date, a lawyer for Commercial Credit wrote to the debtor's counsel advising him of his representation of Commer-

cial Credit, stating that no notices had been received from either the U.S. Bankruptcy Court or the debtor,[2] and requesting information as to the status of the bankruptcy proceeding. Debtor's then-counsel did not respond to the letter, arguing in his memorandum that he had no obligation to make any such response. It may be noted that all of the information as to the status of the case was readily available in the office of the clerk of court, the location of which is approximately one-half mile from the office of counsel for Commercial Credit.

■ In beginning its analysis of the legal authorities, the court finds nothing in the failure of counsel for the debtor to timely respond to the letter from counsel for Commercial Credit which would operate as an equitable estoppel to asserting the limitation, although counsel in other parts of the state might have handled the matter differently. Debtor's counsel made no representation of any kind to counsel for Commercial Credit. Debtor's counsel did nothing to deter counsel for Commercial Credit from filing a timely proof of claim. The court suspects that it would have been easier to file the proof of claim than to write the letter or, if there was any doubt, to take a two-minute drive to the bankruptcy court clerk's office. Last month, the United States Court of Appeals for the Fourth Circuit dealt with the application of equitable estoppel in the case of *Ellen S. Barry v. Honoria Donnelly, et al.*, 781 F.2d 1040 (4th Cir.1986). Speaking for the court, Judge Phillips noted that estoppel occurs where the aggrieved person reasonably relies on the words and conduct of the person to be estopped, and stated particularly:

> While equitable estoppel in both its general applications as well as in its special application to statutes of limitations pleas frequently involves fraud or deceit and is "most clearly applicable" when it does, "deceit is not an essential element of estoppel" in either its general or special applications under Virginia law.

and counsel had received notice of the filing.

---

**2.** This was an inaccurate statement in that, as the court has found, both Commercial Credit

*City of Bedford* [*v. James Leffel & Co.*], 558 F.2d [216] at 218 [4th Cir.1977]; *T ... v. T ...* [216 Va. 867], 224 S.E.2d 148, 152 (Va.1976) ("[t]o establish equitable estoppel, it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice"); *see also Lataif v. Commercial Industrial Construction, Inc.* [223 Va. 59], 286 S.E.2d 159, 161 (Va. 1982) (citing *City of Bedford* on elements of equitable estoppel). The essential elements of equitable estoppel, in both its general applications and in its special application to statutes of limitation pleas under Virginia law are only those stated in *T ... v. T ...*, 224 S.E.2d at 152: "absent a showing of fraud and deception, ... a representation, reliance, a change of position, and detriment" (*citing United States v. Fidelity and Casualty Co. of New York*, 402 F.2d 893, 898 (4th Cir.1968).

(Footnote omitted.) These principles are applicable under Maryland law as well. *See, e.g., Addressograph–Multigraph Corporation v. Zink*, 273 Md. 277, 329 A.2d 28, 31–32 (1974). The silence of counsel for the debtor in possession after receiving the letter does not rise to the level of equitable estoppel, particularly as here where the court is not aware of any duty to respond to such a letter or, if there were such a duty, that counsel's duty to his own client would be outweighed. *See also, Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191, 194–95 (D.Md.1983); *Borg–Warner Acceptance Corporation v. Rossi*, 365 F.Supp. 56 (D.Md.1972); *Rockville Fuel & Feed Co. v. City of Gaithersburg*, 266 Md. 117, 291 A.2d 672, 680–81 (1972).

■ The court now turns to a discussion of other cases dealing with relief from bar dates for excusable neglect. A recent discussion of the entire issue at the court of appeals level appears in *In re South Atlantic Financial Corp.*, 767 F.2d 814 (11th Cir.1985), *cert. denied sub nom. Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986) ("SAFCO"). There, the party-creditor did not file a proof of claim but did file a notice of appearance requesting copies of future pleadings and orders. Counsel admitted her client had failed to submit a timely proof of claim because of her error. The bankruptcy court concluded that counsel's error did not constitute excusable neglect and denied the request to file an untimely claim. In addition, the bankruptcy court found nothing in the nature of "an informal proof of claim."

The *SAFCO* court reviewed a number of opinions which have examined the meaning of excusable neglect, all generally pointing to the conclusion that if relief is to be granted on the grounds of excusable neglect, the movant's failure to comply with the bar date must be due to no fault of its own.

Rule 9006(b) makes it clear that, when a party moves for an extension of time *after* the expiration of the time period, it must show that its failure to act before the court's deadline was the result of excusable neglect.

Courts have interpreted "excusable neglect" under Rule 9006(b) and its identically worded predecessor, Rule 906(b), as requiring the movant to show that " 'the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.' " *In re Gem Rail Corp*, 12 B.R. 929, 931 (Bankr.E.D.Pa.1981) (quoting *In re Manning*, 4 B.C.D. 304, 305 (D.Conn.1978)). Thus, in *In re Underground Utility Construction Co.*, 35 B.R. 588 (Bankr.S. D.Fla.1983), the court held that a creditor had failed to show "excusable neglect" for filing his claim three days after the bar date where the untimely filing was the result of his failure to mail his claim to the proper address. Similarly, in *In re Oakton Beach & Tennis Club Real Estate Limited Partnership*, 9 B.R. 201 (Bankr.E.D.Wisc.1981), the court held that counsel's reliance on misinformation from a bankruptcy court clerk regarding his duty to file a proof of claim did not amount to excusable neglect; *see also In re Horn Construction & Maintenance, Inc.*, 32 B.R. 87 (Bankr.S.D.Ala.1983),

("misunderstanding" between a creditor and its lawyers which caused its late filing of a proof of claim did not amount to "excusable neglect."); *In re Gem Rail Corp.* 12 B.R. 929, 931 (Bankr.E.D.Pa. 1981) (creditor's failure to obtain records with which to file timely proof of claim was not excusable neglect where there was no showing by creditor that records could not easily have been obtained). Courts have been most willing to find excusable neglect where the movant failed to comply with the bar date because, through no fault of its own, it had no notice of that date. *See, e.g., In re Loveridge,* 2 B.C.D. 1597 (Bankr.D.Conn. 1977).

*In re South Atlantic Financial Corp.,* 767 F.2d at 817–18.

The United States Bankruptcy Court for the District of Rhode Island in the case of *In re Lopez,* 39 B.R. 433 (B.C.R.I.1984), made a similar study of drawing the line between excusable and inexcusable neglect. It crafted a useful definition almost identical to that adopted later by the Eleventh Circuit. The Rhode Island court defined excusable neglect as "a term of art meaning 'the failure to timely perform a duty, due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.' " 39 B.R. at 437, *citing In re Torres,* 22 B.R. 418 (B.C.N.M. 1982). There has been no showing of any reason for the court to exercise its extraordinary power to extend the time beyond the procedural deadline. Procedural deadlines are a fact of life in bankruptcy, particularly in view of the mandate of both Congress and the Supreme Court that the objective of expeditious and economical administration of bankruptcy estates is one of the chief purposes of the bankruptcy law. *See Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). *See also, In re Maher,* 51 B.R. 848, 852 (B.C.N.D. Iowa 1985) (wall separating civil and criminal divisions of United States Attorney's office does not constitute excusable neglect where one member of that office does not communicate with another). *See also, In re Thermo Engineering Corporation,* 45 B.R. 596 (B.C.R.I.1984); *see generally,* cases cited at Bkr–L Ed, RULES COMMENTARY AND ANALYSIS § 59.22.4—Excusable neglect standard (Supplement January, 1986).

In summary, the court finds nothing in this record showing that the circumstances causing the failure to file the proof of claim were unique or that the neglect was excusable. The moving party and its lawyer had actual knowledge of the bankruptcy proceeding almost five months before the bar date. The knowledge was by way of a suggestion of bankruptcy filed in state court to stop an ongoing proceeding. In addition, the moving party, together with all other creditors, received the court's official form warning of the bar date and establishing various other deadlines. Armed with such knowledge and being without any excuse for the failure to either check the clerk's file or their own, movant has no excuse for the late filing. Nor was there any cause shown for an extension to file the claim other than the fact that it was late. Without some peg for the court to hang its ruling on, the court has no basis for granting the extension based on cause.

Were the court to find excusable neglect in the circumstances of this case, the drafters of the Rules might just as well eliminate all bar dates in bankruptcy, with cases drifting on in perpetuity. An order will be entered denying the motion for extension of time.